# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA ) 
) 
) 
vs. )          **ORDER**
) 
DIMITAR DIMITROV, aka Dimitr )          2:10-CR-00215-KJD-PAL
Dimitrov and Fero, )
) 
          Defendant. )
_____ )

Currently before the Court is the Government's Appeal of Magistrate Judge's Order (#22), filed November 19, 2009. Defendant filed a Response (#13) supporting his conditional release, to which the Government filed a Reply (#14).

## I. Background

On May 18, 2010, the grand jury returned an indictment charging Defendant Dimitar  Dimitrov ("Defendant") with Felon in Possession of a Firearm, in violation of Title18 U.S.C. § 922(g)(1) and Making a False Statement to Acquire Firearms, in violation of Title 18 U.S.C. §922(a)(6) and 924(a)(2).

Defendant made his initial appearance before Magistrate Judge Robert J. Johnston on May 19, 2010. The Government requested detention. The hearing was commenced on May 20 and continued to May 24, 2010, after which the Defendant was ordered released with conditions. Subsequently on June 4, 2010, the Government filed a Motion for Stay of the Magistrate's Order Releasing Defendant (#21). This Court granted the Stay (#23) and on June 16, 2010, the Government's Appeal was heard and the matter taken under advisement. For the reasons stated herein, the Court grants the Government's Appeal of the Magistrate's Order, and orders Defendant detained pending trial.

## II. Discussion

A district court's review of a magistrate judge's detention order is de novo. U.S. v. Koening, 912 F2d 1190 (9th Cir. 1990). Pursuant to 18 U.S.C. § 3142(g) the Court considers specific factors in

determining whether conditions exist that will reasonably assure the appearance of a defendant and the

safety of the community pending trial.  Those factors in pertinent part are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Here, the Government avers that Defendant is a risk of nonappearance and danger to the

community, that the Magistrate Judge's Order releasing Defendant pending trial should be reversed, and

that Defendant should be detained pending trial.  The Court agrees.  This Court's initial Order (#23),

staying the Magistrate Judge's Order of Release (#18), was, in part, based upon this Court's intimate

familiarity with the voluminous summaries of Defendant's intercepted communications as contained in

the applications for interception associated with this case.

Defendant argues that the translation of the intercepted communications is suspect and that

Defendant was only "bolstering" or exaggerating to impress others.  However, during the appeal hearing,

the Government introduced testimony from a Bulgarian interpreter who audited translations of the

intercepted calls and found the translations to be accurate.  The Government has also adduced evidence

of overt acts, thus dispelling the notion that Defendant's comments were idle talk.

1  **III. Analysis**

2          **1.  Nature and Circumstances of Offense Charged**

3          As stated above, the offenses charged include felon in possession of a firearm, and making

4  false statements to acquire firearms.  (<u>See</u> Indictment, #1.)  Defendant had been previously convicted

5  of felonies in New Jersey and Arizona and was on probation at the time of the instant offense.  In

6  recorded conversations, the Defendant acknowledged the weapon was his and that he had also

7  obtained a shotgun.  Important to the Court for purposes of this analysis is the fact that the weapon

8  was secreted away from Defendant's home to prevent detection by probation officers.  During his

9  conversations, Defendant also discussed his intent to prevent probation officers from inspecting his

10  residence, which he had placed in his wife's name, and his plans to obtain a fraudulent decree of

11  divorce to buttress his position that the probation officers could not conduct home visits or

12  inspections.  That the Defendant was mistaken in his belief as to the lack of authority of the

13  probation officers to visit his place of residence, does not detract from the fact that it was his

14  intention to engage in deception and to conceal his activities from them.

15          **2.  Weight of the Evidence**

16          The evidence against the Defendant on the gun charges is strong.  The intercepted

17  communications include numerous admissions by Defendant concerning his criminal activities.  As

18  stated above, these include admitting ownership and possession of weapons in violation of his

19  conditions of supervision and the deception employed to prevent discovery.  The Government claims

20  to have recovered the handgun from a location near Defendant's residence.  The evidence includes

21  statements by Defendant that he purchased or acquired 400 rounds of ammunition for the weapon

22  and that he practiced firing the weapon.  Defendant is also heard admitting his activities in

23  connection with other crimes for which he has been charged in other indictments now pending in this

24  district.

25          **3.  History and Characteristics of Defendant**

26          **A.  Character, Physical and Mental Condition, Family Ties, Employment, Financial
          Resources, Length of Residence in the Community, Community Ties, Past Conduct,**

27

28                                                                  3

**History Relating to Drug or Alcohol Abuse, Criminal History and Record Concerning Appearance at Court Proceedings.**

Defendant argues that he is not a flight risk because he did not flee following imposition of his sentence in Arizona.  However, he had no reason to flee.  He anticipated being placed on probation.  Also, Defendant's intercepted communications include his discussion of plans to leave the United States if he is not able to manipulate authorities into granting a transfer of supervision from Arizona to Nevada.

Defendant's criminal history includes more than a decade of incarceration in Bulgaria and two prior felony convictions in the United States.  In addition to the new felonies alleged in this case, Defendant is facing felony charges in two other cases pending in this District.  Those include theft of expensive automobiles and use of sophisticated devices to obtain confidential banking information for the purpose of identity theft. Additionally, though Defendant's physical condition is presented to be that of someone who is impaired and unable to work, he is heard discussing plans to travel on little or no notice.  He is also heard discussing plans for future criminal activity.

While Defendant argues family ties as a reason he would not abscond, such ties are weak.  He is heard discussing his lack of concern for his daughter.  His spouse is employed outside the home, presumably to support herself, yet Defendant is heard discussing his access to large sums of money. The Government claims to have found, in the family home, photos of Defendant engaged in sexual activity with other women.  Additionally, the Government has produced evidence that Defendant is being investigated for coercing sexual activities in Bulgaria.

Defendant's residence in Las Vegas, Nevada is tenuous.  His residence, appraised at $200,000, is held in the name of his spouse.  That the spouse is willing to post the residence as collateral for Defendant's  release, is problematic. According to Defendant's intercepted conversations, it is being held in her name as a subterfuge.  Defendant has demonstrated little concern for her.  In light of what Defendant has said and done, there is little doubt that, given the opportunity, he would flee, causing her to lose the home.  An unintended consequence of releasing Defendant upon the condition that the residence be posted as security for his release is that the

4

spouse could herself become victim.  Defendant has few ties to the Las Vegas, Nevada community and has stated his intent to leave if things do not go his way.  Finally, Defendant's character is one of dishonesty and violence.  He is heard discussing his future plans to commit crime both in the United States and other countries.  He has stated his desire and intent to harm an individual who, he claims, owes him money.  Defendant's criminal history includes convictions and accusations for the same kinds of crimes alleged in the three pending indictments.

Defendant also has a history of alcohol abuse.  In one conversation, he discussed deceiving the probation officer by claiming that the alcohol belonged to his wife so he would not be found in violation of the conditions of supervision.  In other conversations, he discussed drinking large quantities of alcohol.

**B.  Whether at the Time of the Current Offense or Arrest the Person was on Probation.**

As stated, Defendant has a 2009 Arizona felony conviction for fraud.[1]  He is currently on probation for that offense.  During intercepted conversations, Defendant describes his ongoing criminal activity which includes debit or credit card skimming and his sales of cocaine.  Defendant also has a conviction for felony alteration of motor vehicle trademark/VIN from New Jersey in 1998.  Numerous interceptions reveal Defendant instructing others how to obtain and transport vehicles out of the United States for resale overseas.  He served eleven years in prison in Bulgaria for hooliganism, theft and currency crimes.  According to the Government, the Bulgarian government has sought to have Defendant extradited from the United States to face various charges in Bulgaria.  The interceptions include conversations in which Defendant discussed his relationship with organized crime figures in Bulgaria and his intention to carry out criminal activities both in the United States and abroad.

**4.  Nature of Seriousness of the Danger to Persons or the Community that would be Posed by the Person's Release**

Defendant has stated his intent to continue to participate in credit card theft and forgery

---

[1]Defendant has been intercepted communicating with Brian Johnson, a Co-Defendant in the Arizona fraud case.  Mr. Johnson is currently a federal fugitive whose whereabouts are unknown.

5

crimes, crimes for which he has already been convicted and sentenced.  Probation is unlikely if he is convicted of current charges.  Following his New Jersey conviction, Defendant continued to counsel and participate in the acquisition of stolen vehicles.   Following his Arizona conviction, he continued to plot the skimming of credit and debit card information for the purpose of looting bank accounts.  He is heard discussing plans to improve his marksmanship with firearms, aiming for the head, to deal with those who are wearing bullet proof vests.  Defendant, on numerous occasions, is heard discussing the hiring of individuals in Bulgaria to injure and maim a person Defendant claims owes him money.  His ideas have included mayhem, mutilation and torture.  If earlier convictions and probationary supervision did not dissuade him from further crime, he is unlikely to be deterred by pretrial supervision.

Defendant is accused of gun crimes in the indictment pending before this Court.  He is accused of theft and fraud in the other indictments pending against him in this district.  The weight of the evidence, which includes several months of intercepted communications, is strong.  The Defendant has made many admissions.  Although he now suggests he was only boasting, there is significant physical evidence demonstrating that the Defendant has actually committed the crimes with which he is now charged.  Defendant's history and characteristics are that of a lifelong criminal who has little regard for others.  His family and community ties are weak to non-existent.  He is unemployed.  His residence in this community is brief.  His history of alcohol abuse is not refuted.  Any record of Court appearances in response to his crimes in the United States is offset by recorded admissions that he intends to abscond if he is not able to have his way while under supervision.

Defendant's ongoing plans to commit additional crime either here in the United States or in other countries demonstrate the futility of pre-trial supervision.  Probationary supervision did not stop him from committing new crimes.  Absent a pre-trial services officer residing with the Defendant on a round-the-clock basis, there can be no assurance that he will not use the telephone, internet, or other methods of communication to continue his criminal activities.  That he has applied for an additional passport is not refuted.  The conditions of supervision, including the condition that Defendant refrain from possessing a firearm, have been demonstrated to be wholly inadequate for

6

1  this Defendant even while under probationary supervision.  Location monitoring will do little to

2  prevent the Defendant from engaging in further crime.  He has been conducting significant new

3  criminal activity from his home while on probation.

4        No presumption of correctness attends the recommendation of pretrial services or the

5  decision of the Magistrate Judge.  They did not have the advantage of reading the extensive

6  summaries of Defendant's conversations which were reviewed by this Court in connection with

7  issuance of orders for interception.  Interception occurred over a period of many months.  Most of the

8  interceptions were approved by this Court following careful review of sworn applications which

9  clearly revealed Defendant's involvement in ongoing criminal activity.

10       Defendant is presumed innocent.  However, the evidence against Defendant on his current

11  charges will be very difficult to explain or refute.  He is facing a significant prison sentence if

12  convicted.  The evidence of Defendant's danger to the community and his risk of non-appearance is

13  clear and convincing.  No condition or combination of conditions of pretrial supervision will be

14  sufficient to protect against those risks.

15  **IV. Conclusion**

16       Accordingly, **IT IS HEREBY ORDERED** that the Government's Appeal of the Magistrate

17  Judge's Order (#22) is **GRANTED**.

18       **IT IS FURTHER ORDERED** that, to assure the Defendant's appearance and protect the

19  public from further crimes of the Defendant, Defendant be detained pending trial.

20       DATED: June 25, 2010.

21

22  _____

23  UNITED STATES DISTRICT JUDGE